The next case up this afternoon is 4090306 for the Marriage of Paul. The appellant is Attorney Scott Courting. You are he, sir? Yes. The appellee is Robert Jacobson. You are he? Yes. Okay. You may proceed, Mr. Courting. I'm pleased to report, Counsel. Good afternoon, Your Honors. My name is Scott Courting and I am the attorney for Michael D. Gudgel, the intervenor and the appellant in this cause. This appeal arises out of a unique set of circumstances that arose in the trial court before Judge Block in Champaign County in which Mr. Gudgel, as an intervenor, sought an award of attorney's fees from one of the other spouses, from Mitch Powell. The trial court twice denied Mr. Gudgel's request for attorney's fees and this appeal results. This court should reverse the trial court's holding that the Illinois Marriage and Dissolution of Marriage Act forecloses in intervening non-spouse from obtaining an award of attorney's fees from an original party. First, that's for three reasons. The first is that the plain language of the intervention statute in the Civil Practice Law, the Code of Civil Procedure, specifically confers upon Mr. Gudgel the rights of an original party as an intervening party. The second reason is that the plain language of the Marriage and Dissolution of Marriage Act itself authorizes a non-spouse intervenor in this situation to be eligible for such an award. And the third reason is that if you look at the language of those two statutes, there actually is no bar. There's no express bar. For those three reasons, this court should reverse the determination of the trial court. As a threshold matter, I would note that on June 1, 2006, with the assistance of counsel, after hearing extensive arguments, including those for and against the petition to intervene, Judge Blockman did grant that petition and included in that order, entered that same day, certain restrictions that are suggested by the plain language of the intervention statute itself. Those restrictions included that he couldn't raise any new issues, that he was not permitted to hijack the proceedings, and other restrictions. In addition, that very order contemplated, at the request of Mitch Palzone, lawyer, that the issue of attorney's fees ought to be addressed during the intervention period. We further note that at that hearing, before the trial court, Mr. Pal's final counsel at that time, Arthur Lerner, he's the one who specifically raised the issue of attorney's fees and he said, quote, you can fix fees against anybody under 508, referring to Section 508. The issue of contribution to attorney's fees was really contemplated from the outset of Mr. Guedjell's intervention. I would note, and I do so in candor, that this issue appears to be an issue of first impression in this state. At the trial court, neither Judge Blockman nor any of the three attorneys could find any case that addressed specifically the statutory provisions in a dissolution matter. First, as an original party, the intervention statute unambiguously establishes that an intervening party has the rights of an original party. In a dissolution proceeding, obviously the original parties are the spouses. The statutes ought to be construed to make clear that in situations like the Marriage and Dissolution of Marriage Act, there are provisions where certain remedies are restricted out of necessity. And we acknowledge that. There are certain remedies that are only available to the original parties. And those are remedies where the Act itself, the Marriage and Dissolution of Marriage Act, makes very clear that those are exclusive remedies. In the absence of that kind of express exclusivity provision, an original party is entitled to all other rights. I want to address the standard of review at this point. I will say that I really don't think, even though the brief suggests there's a dispute, I really don't think there's a dispute on the standard of review. Mr. Gadjilan's appeal does not raise whether Judge Blockman erred in denying a Section 508B claim for attorney's fees. It's our position that he never reached the merits of those claims. And as a result, the issue of whether attorney's fees are available through any of the three vehicles in the Act to an intervener, namely as a 508B attorney's fees, misconduct fees, that are akin to Rule 137 sanctions. The second is contribution, final contribution at the end of the case. And the third is an interim attorney's fees measure. Those are the three remedies that we believe the record indicates Judge Blockman concluded as a matter of law were not available to Mr. Gadjilan as a party who had properly been granted leave to intervene. Well, we could affirm on any basis shown by the record. Assuming we agree that it's theoretically possible your client could be awarded attorney fees, why should the trial court or this court do that? That is, if we concluded, yeah, it's possible, but he doesn't get it, then we could affirm on that basis, could we not? If I understand Your Honor's question, you're asking me if this court reads the record opposite the way that we do, namely that Judge Blockman held that there were a remedy available to Mr. Gadjilan, yet he denied it on the merits. I agree, Your Honor, and I agree that we're not disputing the merits issue. We're not suggesting Judge Blockman abused his discretion. What we're appealing is the threshold inquiry, which we believe the record shows. Well, we never even have to reach it if we think that, assuming the statute even applied, that he's not entitled to attorney fees no matter what. Isn't that true? That is true for the Section 508B claim. I agree, Judge, that is true. Under what claim would it not be true? Well, under the other two avenues, or V equals 4 relief under the Act, namely a request for interim attorney's fees and a request for final contribution of attorney's fees. Judge Blockman pretty clearly held that, at least in his view, there was no remedy available to Mr. Gadjilan because he wasn't a spouse. So if we assume there's a remedy available but he doesn't get it? Well, you certainly could do that, Your Honor, but the issue was never reached at the trial court. We were never given an opportunity to offer any evidence on those issues, and as a result... What part of this record is insufficient on that basis? Well, if we assume, Your Honor, that the trial court ought to have considered the intervener's motion for attorney's fees and costs as an interim fees request, then I would suggest that Mr. Powell never really filed any counter response. He never indicated at that point what amount of fees he had paid to his own attorney. So in terms of whether this court were to consider sufficient evidence existed in the record to determine that, my suggestion is, at least on the interim fees record, we don't have a complete record. Well, give me the 25-word explanation as to why your client should be entitled to attorney fees in this case, given that he was an intervener. Because the evidence, had we been permitted to offer it, would show that the attorney's evidence... If we were permitted to offer the evidence, it would have shown that there was a need by Mr. Gadjilan for a contribution from Mr. Powell for a number of reasons. Misconduct on the part of Mr. Powell's part, and on financial necessity. And the financial necessity, I guess, is different because we raised it before the case was really finished, and then again at the end. What do you mean financial necessity? Well, that would be part of the analysis that would be required by the trial court in considering an interim attorney's fees or a contribution analysis. Well, interim attorney fees weren't ordered, so now we're just talking about attorney fees, aren't we? Are you entitled to attorney fees? Is Mr. Gadjilan entitled to attorney fees for what he expended? Isn't that the issue? I don't understand interim as opposed to cases over attorney fees. Why do you draw that distinction? I'm just drawing that distinction because arguably the factors the court would consider are different under those circumstances. There are factors to consider, and I'm just trying to be candid. In essence, Judge Block went out of economy and said, I'm going to take the same request that you made when you filed it sort of in early 2008. You denied it in April 2008. He said at the hearing in January of 2009, I'm going to consider the same request when it comes to contribution. I'm going to deny it for the same reasons. So your argument is your client is entitled to attorney fees because of misconduct by Mr. Pell? That's one of the evidence, yes, sir. Where does that fit in? If they were spouses, how does that apply, that misconduct entitles you to attorney fees? Under subsection B of section 508, the act itself indicates that the trial court can, if it finds that certain conduct by the parties or an attorney was interposed for a needless purpose of harassment or imposing improper... That sort of misconduct, harassment or improper filings? Yes, sir. That's one of the bases that we believe Mr. Gudge will be entitled to relief. But under the statute that was in effect at the time your case was being heard in front of Judge Blockman, the statute read under this section. So the 508B factors for misconduct apply to hearings under that section, which relates to enforcement proceedings. Since that time, the act has been amended to say under this act. And I think a broader reading could be made, but if you look at the version that was in effect at the time of the trial, it said if conduct occurs at a hearing brought under this section, and section B relates to enforcement proceedings, does it not? I guess I would say, Judge, that's subsection B. Right, it doesn't say subsection B. It says section B. Right. And so as a result of that, I guess I understand what Your Honor is saying, but I don't think that's what the act is intended to say. I realize that there's been an amendment. But what we're talking about is the old version of subsection B ought not be construed as limited only to attorney's fees requests. That's what it would have to mean if I understand what Your Honor is saying regarding the difference between what the act said at the moment at that time and what the act says now. I shouldn't say the act, but what subsection B says then versus what it says now. I may be inartfully communicating this, but that subsection didn't mean at the time that a trial court could only award what I'm calling misconduct fees if it were at an attorney's fees. How do you get that interpretation? Because if you think of it in the broader context of what section 508 involved at that time, which was brought up, it didn't just include proceedings for fees against your own client. It included interim attorney's fees. It included contribution fees. Those are cited. That's the source of the remedy in the act. Those remedies also refer to other factors that are to be considered along with other provisions. For example, Your Honor, section 503 deals with marital property issues. It's all linked together, which I do agree creates some of the confusion here. But the fact that subsection B of section 508 referred to proceedings under this section doesn't mean Mr. Gudgell's proceeding falls outside of... What case says that? Do you have a case that says that? No. What was the impropriety? What was the misconduct in this case? I want to answer straight forward, Your Honor. I also want to say that isn't the issue. We're not on appeal. I just don't want to be accused of confusing and clouding issues. We're not suggesting that... I hope I made that clear. I don't want to mislead the court. We're saying that there would have been sufficient evidence to establish that. The misconduct that was alleged by Mr. Pal... Did you make an offer of proof? I don't believe so. I don't believe so. We had allegations in our motion that was filed in February 2008. Those allegations established that Mr. Pal filed, and his attorney filed, pleadings that were designed... Your client was convicted of murder when he was convicted of voluntary manslaughter. And home invasion, which is a figment of imagination. Yes. I don't see... So that's it? Well, that he made the filing was the act, but also with certain knowledge. So they were mistaken. He was convicted of voluntary manslaughter of his former wife. He killed her. Killed her, yes, sir. And they said it was murder and home invasion. And that was clarified at some point. So you guys said, oh, that wasn't the case. It was voluntary manslaughter. Right? Yes, sir. Anything else? Yes. What else was the misconduct? Well, our motion alleged that he made these filings and started to object to Mr. Gudgel having contact with the children. I'm referring to Mitch Pal made these objections. After knowing that they had been going on for quite some time and having raised notice... Knowing that what had been going on? That there had been contact between Mr. Gudgel and the children of the spouses. Well, that objection could be made whether he was 20 years ago convicted of murder or in voluntary manslaughter. Right? I mean, the objections don't depend on the nature of the crime that was committed years ago. Right? Yes, that's true. So you may not pretend to read Mr. Pal's mind, but I understand the point. I'm not suggesting that the difference is huge. At the bottom, Mr. Pal said, hey, wait a minute. This guy killed his wife. Now he's with my kids. I don't want that to happen. Whether it was murder or whether it was voluntary or involuntary. Killed his wife. I don't want him around my kids. So what's the problem with that? If Your Honor is asking what's the problem with making those allegations? Yes. Well, they were disingenuous. That's what we believe the evidence would have shown. And he alleged that there was voluntary manslaughter instead of murder. Would there be any problem with any of that? Yes, because our allegations are he didn't have any problem with this very contact, which we submit he knew about. We allege that he knew about until after things started not going his way. So that's the basis of the misconduct for which you claim your client is entitled to attorney fees? It's one of the bases, yes. Let's put it in the statutory language. Yes, sir. What is the improper purpose for Mr. Powell raising these objections? To throw up roadblocks in the proceeding and to stop. Counsel, as a matter of law, how can that possibly be true? To be improper for a father to say, I'm concerned about a guy spending time with my young children as the girlfriend of my former wife, when this guy beat his former wife to death. Explain to me how, under what theory of law, this could possibly be viewed as misconduct? Your Honor, I'm not raising it as a theory of law. I understand, I'm not suggesting that that was, at least in this appeal, an improper decision. I fully understand and I don't pretend ignorance at. I'm not feigning confusion as to why Judge Blockman ruled as he did, if he in fact ruled. If he in fact ruled on the merits. So, I'm not suggesting that there's a huge difference when you're sitting as a family law judge. Well, what is it we're supposed to reverse here? I'm not sure. We're supposed to reverse and send this back because why? Because Judge Blockman erred in holding that the Marriage and Dissolution of Marriage Act does not permit a non-spouse intervenor to be eligible for attorney fees. That's the legal issue. It's the only issue we place before you. And we can't reach the fact that had he said, yeah, maybe theoretically it's possible, but not this guy in this case? We can't reach that? You can, and in fact, if you do find that there is a remedy, I'm not objecting to that. We're not raising or suggesting that Judge Blockman was then wrong on the merits. All we're raising is we believe... So, this is an academic exercise then? No, sir, because there are two other avenues for relief as well. What are they? That the petition for, that the intervenor's motion for attorney's fees filed February 20, 2008 and renewed orally January 29, 2009. Excuse me, I have the dates wrong. But in other words, if the motion at both times that it was denied... Those interlocutory orders? That's what you're trying to appeal here? Appealing the interlocutory order and also that it was a denial of Mr. Gudgel's right to seek contribution. Under 508A, you're asking, isn't that what you're asking us to say? That you had a right to attorney's fees under 508A in addition to 508A? We had a right at least to a proceeding, yes. And it was summarily denied for the reasons he gave before. And the reasons he gave at the first hearing, Your Honors, was because you don't have a remedy. You can't get it under the act the way he construed the act. He says you're not eligible. And the record and the act, both of the acts that are in play... So if we said, maybe theoretically it's possible, we sent it back to Judge Blockman to think about that, and he said, no, not this guy, not under these circumstances, then everything would be hunky-dory? Legally. Yes. I don't want to propose the right to challenge whatever his ruling or reasoning might be on remand. I don't want you to think it's an academic exercise. It's not. It is, I think, a viable legal issue that's never been considered before. And that's what we place before you. If you find that... Oh, I'm sorry. I'm out of time.  You have an opportunity to address this again in the rebuttal, Counsel. Mr. Jacobson? Good afternoon. May it please the Court. Counsel? Robert Jacobson on behalf of the appellee, Mitchell Powell. As the Court has already discussed this afternoon, this is a situation where very early on in pre-judgment proceedings in the dissolution of marriage case, Mitch Powell filed a petition to restrict contact between his two sons and his estranged wife's boyfriend, Michael Gudgel, primarily upon his prior felony record as a voluntary manslaughter conviction, defending the death of his former wife. The Court temporarily granted this request, pending a psychological evaluation of Mr. Gudgel. Mr. Gudgel sought leave to intervene voluntarily, and he was given leave to do so. Important to note that this intervention was voluntary, I believe, since his rights really were perfectly aligned with Angela Powell's case. The trial court did, we agree, ultimately rule that Mr. Gudgel did not pose a current danger to the children. And once the court ruled on that, actually prior to the court ruling, once the psychological evaluation came back, by agreement, the prior restrictions were lifted. Subsequent to that, Mr. Gudgel has repeatedly attempted to seek a fee contribution from Mr. Powell, first through Supreme Court Rule 137 sanctions, denied. It's not on appeal at this point. And later in the case, through Section 508 that we're talking about here today. And again, denied. These are the circumstances under which the trial court faced its determination that... Why was it denied under 508? What was the reason given by Judge Block? There were two reasons, I believe. The first reason is that the court explicitly, at the hearing, indicated, regarding 508B, that even if 508B applied, and I think the court had some question as to whether or not it did, and Your Honor raised the point a few minutes ago about the limitation on how 508B can be interpreted in the subsequent modification. Very much an open question as to whether or not it could be applied or applied to intervene orders, even aside from that limitation. But the court said, assuming it does apply, just like I don't find there was a 137 claim, I don't find there's a claim under 508B for similar reasons. I don't find that it was initiated for improper purposes. I don't find that it was designed to harass, create unnecessary delay, or needlessly increase the cost of litigation. So it sounds like a decision on the merits. And I would agree. And the court went on to say, I think it was something necessary to protect the interest of these children, which is the ultimate responsibility of the court. So I believe that the court very clearly and very directly, on the merits, ruled. So these were alternative rulings? I don't think it applies, but if it is, he loses anyway? Well, I think that the court clearly had a question as to whether 508 at all even applied. But I believe that the court went on to say, based on what I just read, that even if it applies, I have looked at the merits, and on these merits, this is what I rule. And his ruling is just tracking the wording of 508B. It was not for an improper purpose. Not only was it not improper, the court indicates that he thought it was necessary to protect the interest of these children. So I believe that was on the merits. Now, I do believe that regarding Section 508A, the court also had questions about whether or not that would apply to an intervenor at all. And when the court ruled regarding Section 508A, the conclusion that the court reached was that it did not apply. And the court looked at the particular provision, realized that it refers directly, when you're talking about final contribution, to Section 503J. All final contribution requests should be awarded pursuant to 503J. When you go to 503J, it specifically indicates that all final contribution awards will be evaluated based upon the factors in 503D, regarding the division of marital property, and 504, regarding the award of maintenance. The court looked at that and said, I don't have anything to apply. I don't have anything to apply here. The statutory scheme does not contemplate intervenors. When the statutory scheme directs us to two particular portions of the IMDMA that are clearly between spouses. And then even if you go beyond that and review those factors, they are between, that it's dealing between spouses. And the court was left to basically say, well, what do I then consider? Do I consider the conduct of the parties? Well, I've already done that. Was there an offer of proof made regarding additional evidence that Mr. Gudgell claimed should be considered by the court? I don't believe that that's the case. I don't believe that was the case, Your Honor. I was not trial counsel at that time, but based on my review of the record, I don't believe that was the case. Does the record show the reason behind the error in the claims regarding Mr. Gudgell's criminal record? I believe that the dialogue that occurred in court regarding the attorneys involved at that time indicated that not necessarily the reason for why it was incorrectly in the motion listed as murder as opposed to voluntary manslaughter, but an acknowledgment that that had been corrected. Everybody agreed at that point that, okay, it is voluntary manslaughter. And where did the home invasion claim come from? I am not sure where the home invasion claim came from. There was another misdemeanor conviction, I believe, that Mr. Gudgell had, and I believe that that was potentially related to something with home invasion, but I am honestly not sure. And I know that my understanding is what happened in the hearing at that time was that the issue was raised by Mr. Gudgell's counsel that there was not a home invasion conviction and not a murder conviction. In fact, there was a felony voluntary manslaughter conviction and then another unrelated misdemeanor conviction. You weren't counsel? Arthur Lerner was counsel at that point. Or Mr. Pell? And at that point, my reading of the record is, and the transcript of that hearing, is that Mr. Lerner amended on its face his petition and everybody moved on. And I think the court really didn't place too much on that distinction. It's appropriate to have the record listed correctly, but the court clearly still felt like it was appropriate for Mitch Pell to raise a concern that Mr. Gudgell was convicted of... Who was Mr. Gudgell's counsel? Mr. Corgan, I believe it was. Go ahead. So I believe that when it comes to 508B, the court clearly ruled on the merits, even while questioning whether or not 508B would apply. When the court looks at 508A, the trial court was at a loss as to what even would apply. Looked at the particular statutes, looked at the statutory scheme, looked at the two factors, the one set forth in 503D, the one set forth in 504, and determined that there was nothing left to apply unless you applied... If you started going back to the issues related to conduct. But again, the court already ruled on the issues related to conduct, and so that would really just be duplicating what had already been done. I think two important things to note as well, that the argument set forth by Mr. Gudgell is really based, I think erroneously, on two things. One is that in order for Mr. Gudgell as an intervenor to not have the right to seek a contribution under 508A, the statute needs to somehow expressly say, this does not apply to intervenors. There needs to be an express bar, I believe was the language that was used. Well, that's not the case at all. If you look through the IMDMA, there's many portions that just clearly don't apply to intervenors. But it's not because there's an express bar, it's because you look at the statute as a whole, you look at the statutory scheme, and it's clear it doesn't apply. And that's exactly what the trial court did in this case regarding Section 508A. I think the other premise that Mr. Gudgell is erroneously relying upon is the idea that Section 508 uses the word party instead of spouse. And therefore, any time the word party is used, it's all-inclusive. It must include intervenors. If the word spouse is used, well, of course, that's limiting. Again, a review of the statute as a whole makes it clear that maybe in a perfect world, each time the legislature was setting forth different parts of the statute and different amendments, spouse would be more limiting, party would be more all-inclusive. But that's clearly not what's happening. Going back even to the award of maintenance factors and the allocation of personal property or marital property factors, when you look through those, on one section, one factor will refer to parties. The very next factor will refer to spouse. And then it will switch back in the next factor to parties, even though clearly when you're talking about award of maintenance, that's spouses. But you read through the statute and it lists the factors that you use. And sometimes they say spouse, sometimes they say party. I don't think that it is persuasive to rely upon the distinction between party and spouse as a basis for the entire statutory scheme. Which is a nice way of saying the inability of the legislature to consistently draft statutes so that they make sense. Well, that's right. And sometimes it's more understandable, sometimes less understandable. I mean, this strikes me as one that's pretty understandable. I mean, if you're writing a statute, I think it would be very easy to interchange the use of those. But I think the important thing is, by looking at the entire IMDMA, it's very clear that the entire statute uses them back and forth randomly. And for Mr. Gudgell to assert that because 508 uses the word party instead of spouse, that automatically gives him a right to seek these. I believe that that's an erroneous argument. In this case, the trial court looked at the facts of voluntary intervenor who sought leave to intervene as a permissive party. A petition by Mitch Powell to limit contact, at least on a temporary basis, will automatically be looked into between Mr. Gudgell and Mitch's sons. An issue which the court determined to have been legitimately raised by Mitch Powell based upon Mr. Gudgell's prior conviction. The court looked at those facts, correctly ruled that Section 508 does not apply based on the facts of this case, based upon the statutory scheme. No factors to apply. And the court went on to rule regarding Section 508B, that even if it does apply, which is certainly questionable, it does not warrant a fee contribution in this case on the merits based upon the facts of this case. We agree that the court has the ability to look at this and say, even if we find there's a remedy here, not under these circumstances. And I certainly believe that these are not circumstances where that remedy, even if available, would be appropriate. I believe that the trial court so ruled, and that is what we're asking that the court today affirm. Thank you, counsel. Mr. Corning, any rebuttal, sir? Okay. The different use of the words spouse and party is not accidental. As my brief sort of exhaustively shows, these two different terms are used throughout the act. They're not always interchangeable. You mean you think the legislature had envisioned some sort of case like this where they'd want to provide the possibility of returning fees for intervenors? Yes, I do think the legislature intended that because the act itself allows for other interventions. This happens a lot, and I'll grant you, Your Honor, that I don't know if it's 99.9% of the cases, but it's a lot of cases. The Dissolution of Marriage Act speaks about intervenors? Well, the Dissolution of Marriage Act talks about, for example, the State Department of Public Aid intervening, etc. It also includes an express provision that says all the provisions of the civil practice law apply unless the act says otherwise, and that's our point. The act doesn't say, Mr. Godgill can't have these remedies. I realize that the vast majority of the case law, probably more than the vast majority, doesn't address that issue because you don't generally have a non-department, non-state agency intervenor. But the fact that this situation presents one doesn't mean that the legislature intended that he could not have. The trial court held that Mr. Powell could have sought fees from Mr. Godgill, and Mr. Powell's counsel at least at trial agreed with that. I certainly don't think the legislature intended that that could be permitted, but that the opposite could. But that issue isn't before us. But in terms of the argumentation about what the legislature intended. It sounded to me, based on what Mr. Jacobson said, that there was a two-part ruling Judge Blackman made. The first part was, you're not eligible to recover attorney fees under the act. And the second part was, even if you were, I wouldn't award them. Isn't that correct? I don't, our position is that that's not what his ruling was. But I acknowledge him. What about all that stuff that he was citing there about how would I do that, and there was no misconduct and all the rest of that. Part of the ruling, how did all of that by Judge Blackman address eligibility questions? It sounded to me like that was a ruling in the merits. But Judge, if Judge Blackman says I don't have any factors to consider, what he's saying there is, there's no way for me to award it. There's no way for me to award it. And that's the issue, is that intervenors like Mr. Godgill, under the act, ought to have the ability to see. Judge Blackman held, at least on the contribution and interim attorneys fees angles, that he could not. Because Judge Blackman says there's no factors. I want to ask you a question about that. Yes ma'am, I'm sorry. The contribution and the interim fees. Because 508A is worded to read that interim fees may be awarded from the opposing party. And contribution to attorneys fees may be awarded from the opposing party. So is it your contention that an intervenor is an opposing... Who are the opposing parties in a dissolution, in other words? Who are the opposing parties? How would you look at that? I think the act says the other party. I don't think so. I think it says the opposing party. If you're reviewing, you probably have it in front of you, Your Honor. It indicates opposing party. The reality is when you have an intervening party, it's just like when the Department of Public Aid intervenes. It's the spouses. There are multiple opposing parties. That's certainly not unusual. You don't think opposing parties in a dissolution has a meaning related to the two spouses? It certainly can. But I don't think it's... I'm confident that the act doesn't say... That interpretation of that isn't restricted. I realize, again, most of the time, this is not an issue. That we don't think about other people being involved in a dissolution matter. The trial court held that it was appropriate that Mr. Gadgill's interest had been so brought into the court that he ought to have the opportunity to participate. But isn't he coming in as a person who's looking to protect his own rights and interests? Yes, Your Honor. He's not opposing either side. He's coming in to represent himself and his own interests. I'll agree that that was the motivation. That legally does not make him not an opposing party. How does it legally make him an opposing party? Because the dissolution is filed Mr. X versus Mrs. Y. Or Mrs. X, I should say. I would suggest the facts of this case establish that he was... If you want to say he was aligned with one party, he certainly wasn't aligned with Mitch Powell. I'm not talking about being aligned. I'm talking about opposing parties in litigation. Opposing parties. I see that my time has expired. Well, go ahead and finish your answer if you wish to. The question was just asked. Even though Michael Gudgell likely would never have asked for any relief against Angela Powell, he legally could. And I suggest that that's the distinction here. Just because an intervener might intervene and never ask for relief from either party doesn't mean that that party can't be adverse. I agree he wasn't really adverse to both parties here in terms of alignment. But legally he was. That's what intervention means. Thank you, counsel. Take this man under your advisement. Be in recess for a few minutes.